Curtis A. Graham, Bar No. 215745
cagraham@littler.com
E. Cliff Martin, Bar No. 227357
cmartin@littler.com
LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, California 90071
Telephone: 213.443.4300
Fax No.: 800.715.1330

Alexandria Rafizadeh, Bar No. 273494
awitte-rafizadeh@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, California 90067.3107
Telephone: 310.553.0308
Fax No.: 800.715.1330

Attorneys for Defendant
LINEAGE LOGISTICS SERVICES, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| CHARLES MITCHELL, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LINEAGE LOGISTICS SERVICES, LLC, a limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.<br><br>**NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION**<br><br>Trial Date: None Set<br>Complaint Filed: June 28, 2024 |

**TO THE CLERK OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF CHARLES MITCHELL AND HIS ATTORNEY OF RECORD:**

PLEASE TAKE NOTICE that Defendant LINEAGE LOGISTICS SERVICES, LLC ("Defendant") removes to this Court the state court action described herein. Defendant removes the captioned action from the Superior Court of the State California for the County of Sacramento. Removal jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1332(a), 1441(a) and (b), 1446, and 1453.

## I. STATEMENT OF JURISDICTION

1. Removal jurisdiction exists because, in relevant part, this Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), United States Code, 28 U.S.C. § 1332(d). CAFA grants district courts original jurisdiction over civil class actions filed under federal or state law in which any member of a class of plaintiffs, which numbers at least 100, is a citizen of a state different from any defendant and where the amount in controversy for the putative class members in the aggregate exceeds the sum or value of $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions pursuant to 28 U.S.C. § 1441. As set forth herein, this case meets all of the requirements for removal and is timely and properly removed by the filing of this Notice.

## II. PLEADINGS, PROCESS, AND ORDERS

2. This action was filed in the Superior Court for the State of California for the County of Sacramento. Accordingly, venue properly lies in the United States District Court for the Eastern District of California, Sacramento Division, pursuant to 28 U.S.C. section 1441(a).

## III. TIMELINESS OF REMOVAL

3. On June 28, 2024, Plaintiff commenced this action by filing a class action complaint in the Superior Court of California, County of Sacramento, entitled CHARLES MITCHELL, individually, and on behalf of all other persons similarly

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

situated, v. LINEAGE LOGISTICS SERVICES, LLC, a limited liability company; and DOES 1 through 10, inclusive, designated as Case No. 24CV012996 ("Complaint"). Declaration of Curtis A. Graham, ¶ 2.

4. In the Complaint, Plaintiff, a former employee of Defendant, alleges the following causes of action: (1) Failure to Pay Minimum and Straight Time Wages (Cal. Lab. Code §§ 204, 1194, 1194.2, and 1197); (2) Failure to Pay Overtime Wages (Cal. Lab. Code §§ 1194 and 1198); (3) Failure to Provide Meal Periods (Cal. Lab. Code §§ 226.7, 512); (4) Failure to Authorize and Permit Rest Periods (Cal. Lab. Code §§ 226.7); (5) Failure to Timely Pay Final Wages at Termination (Cal. Lab. Code §§ 201-203); (6) Failure to Provide Accurate Itemized Wage Statements (Cal. Lab. Code § 226); (7) Failure to Indemnify Employees for Expenditures (Cal. Lab. Code § 2802); and (8) Unfair Business Practices (Cal. Bus. & Prof. Code §§ 17200, *et seq*.).

5. On July 3, 2024, Plaintiff served on Defendant the Summons, Complaint, Civil Case Cover Sheet, Notice of Case Assignment and Case Management Conference, and Alternative Dispute Resolution Information Package. Attached as Exhibit A to the Declaration of Curtis A. Graham In Support of Defendants' Notice of Removal ("Graham Decl.") is a true and correct copy of these case initiating documents served upon Defendant. Graham Decl., ¶ 2, Exh. A.

6. On July 3, 2024, Plaintiff filed a Proof of Service in Sacramento County Superior Court. Graham Decl., ¶ 3, Exh. B.

7. On or about July 3, 2024, the Sacramento County Superior Court issued a Notice of Case Reassignment and Minute Order (Complex Determination). Graham Decl., ¶ 4, Exh. C.

8. On or about July 16, 2024, the Sacramento County Superior Court issued a Notice of CMC and Orders Re Complex Case Management Procedures. Graham Decl., ¶ 5, Exh. D.

9. On or about July 18, 2024, Plaintiff filed a Notice of Minute Order. Graham Decl., ¶ 6, Exh. E.

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA
90071
213.443.4300

10. The documents described above and attached as Exhibits A through E to the Declaration of Curtis A. Graham constitute all the process, pleadings or orders related to this case that were filed and/or served upon Defendant or filed or received in the state court action. Graham Decl., ¶ 7. To Defendant's knowledge, no further process, pleadings, or orders related to this case have been filed in Sacramento County Superior Court. *Id.* The attachments thereby satisfy the requirements of 28 U.S.C. § 1446(a).

## IV. NOTICE TO PLAINTIFF AND STATE COURT

11. Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Eastern District of California, Sacramento Division, written notice of such filing will be given by the undersigned to Plaintiff's Counsel of Record and a copy of the Notice of Removal will be filed with the Clerk of the Superior Court for the State of California, County of Sacramento, as required by 28 U.S.C. § 1446(d). Graham Decl., ¶ 8.

## V. TIMELINESS OF REMOVAL

12. This Notice of Removal is timely. Under 28 U.S.C. section 1446(b), the notice of removal of a civil action must be filed within thirty (30) days after service of process. 28 U.S.C. § 1446(b); see *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (the 30-day removal period runs from the service of the summons and complaint). Removal of this action is timely because this Notice has been filed within thirty days from July 3, 2024, the day Defendant was served with the Complaint and first became aware that the action was removable. Graham Decl., ¶ 2, Exh. A.

## VI. CAFA JURISDICTION PURSUANT TO SECTION 1332(D)

13. CAFA grants federal district courts original jurisdiction over civil class action lawsuits in which any Plaintiff is a citizen of a state different from any defendant, and where the matter's amount in controversy exceeds $5,000,000, exclusive of interest and costs. See 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions in accordance with 28 U.S.C. § 1446. As set forth below, this case meets each CAFA

requirement for removal, and is timely and properly removed by the filing of this Notice. Specifically, this Court has jurisdiction over this case under CAFA because it is a civil class action wherein: (1) the proposed class contains at least 100 members; (2) Defendant is not a state, state officials or other governmental entity; (3) there is diversity between at least one class member and one defendant; and (4) the amount in controversy for all class members exceeds $5 million.

**A. The Putative Class Contains More Than 100 Members**

14. Plaintiff defines the proposed Class he seeks to represent as "All persons who worked for any Defendants in California as an hourly-paid or non-exempt employee at any time during the period beginning four years and 178 days before the filing of the initial complaint in this action and ending when notice to the Class is sent." See Exh. A to Graham Decl., Compl. ¶ 24.

15. Defendant currently employs approximately 145 non-exempt employees at its West Sacramento – Promenade facility in California. Declaration of Jordan Middleton ("Middleton Decl."), ¶ 10. There are approximately 364 individuals who were formerly employed by Defendant as non-exempt employees at the West Sacramento – Promenade facility at any time from June 28, 2021, through about July 30, 2024. *Id.*, ¶ 9. The total number of employees who worked for Defendant at any time between June 28, 2020 through about July 30, 2024 at the West Sacramento – Promenade facility is approximately 509. *Id.*, ¶ 8. Accordingly, the putative Class of current and former non-exempt employees contains more than 100 members.

**B. Defendant Is Not A Governmental Entity**

16. The named Defendant, LINEAGE LOGISTICS SERVICES, LLC, is not a state, a state official or any other governmental entity. Declaration of Brian Golper ("Golper Decl."), ¶ 4.

**C. Plaintiff's Citizenship is Diverse from Defendant's Citizenship**

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA
90071
213.443.4300

17. CAFA's minimal diversity requirement is satisfied, inter alia, when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A); 1453(b). Diversity of citizenship exists so long as no Plaintiff is a citizen of the same state as any defendant at the time the action was filed and at the time of removal. For purposes of removal, citizenship of defendants sued under fictitious names are disregarded and only named defendants are considered. 28 U.S.C. § 1441(a).

18. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return).

19. According to Defendant's records, Plaintiff worked as an Internet Fulfillment Associate in Defendant's West Sacramento – Promenade facility in Sacramento, California from October 16, 2023 to March 29, 2024. Middleton Decl., ¶ 5. Plaintiff was domiciled in California while he worked for Defendant. *Id.* Defendant received Plaintiff's home address during the course of his employment for the purposes of his personnel file and payroll checks, and Plaintiff's last known address is located in Yolo County, California. *Id.*, ¶ 6. Moreover, Plaintiff alleges he resides in California. Exh. A to Graham Decl., Compl. ¶ 7. Plaintiff brought his lawsuit against Defendant in Superior Court for the County of Sacramento. Therefore, Plaintiff is and was at all relevant times a citizen of the state of California.

20. For diversity purposes, a corporation "shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. §1332(c)(1).

21. Defendant is a Delaware limited liability company, with its principal place of business in Michigan. Golper Decl., ¶ 3. Defendant is headquartered in Novi, Michigan. *Id.* Accordingly, Defendant is a limited liability company and citizen of Delaware and Michigan. See *Young v. Integrity Healthcare Communities, LLC,* 513

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA
90071
213.443.4300

F.Supp.3d 1043, fn. 2 (S.D. Ill. 2021) ("Although an LLC's citizenship is the citizenship of its members for purposes of diversity jurisdiction, this rule doesn't apply to jurisdiction under CAFA. 'As part of CAFA, Congress chose to modify existing case law concerning the citizenship of unincorporated associations'" such as the LLC, which "'shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized' 28 U.S.C. §1332(d)(10)") (citations omitted); *see also Bond v. Veolia Water Indianapolis, LLC*, 571 F.Supp.2d 905, 912-13 (S.D. Ind. 2008) ("The court treats the term 'unincorporated associations' in subsection (d)(10) as broadly as the Supreme Court had treated it in *United Steelworkers of America v. R.H. Bouligny, Inc.* and *Carden*, so that subsection (d)(10) applies to the limited liability company…. CAFA calls upon courts to apply the same test that applies to corporations" to unincorporated associations such as LLCs); *see also Kurth v. Arcelormittal USA, Inc.*, 2009 WL 3346588, fn. 2 (N.D. Ind. 2009) (same).

22. Minimal diversity of citizenship therefore exists here because the named Plaintiff and Defendant are citizens of different states, in that Plaintiff is a citizen of California, and Defendant is a citizen of Delaware and Michigan.

### D. Amount in Controversy Exceeds $5 Million

23. CAFA authorizes the removal of class actions in which, among other factors mentioned above, the amount in controversy for all class members exceeds five million dollars ($5,000,000). See 28 U.S.C. § 1332(d)(2). The standard for establishing the amount in controversy under CAFA is the preponderance of the evidence standard. *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975 (9th Cir. Cal. Aug. 27, 2013). In *Rodriguez v. AT&T Mobility*, the Ninth Circuit confirmed that the "legal certainty" standard articulated in *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 999 (9th Cir. 2007) was "effectively overruled" by the U.S. Supreme Court's holding in *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345 (2013). *Id.* at 981. Further, as one district court held:

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

> Under this standard, "the removing party's burden is 'not daunting,' and defendants are not obligated to 'research, state, and prove the Plaintiff's claims for damages.'" When a "[d]efendant's calculations [are] relatively conservative, made in good faith, and based on evidence wherever possible," the court may find that the "[d]efendant has established by a preponderance of the evidence that the amount in controversy" is met.

*Cagle v. C&S Wholesale Grocers, Inc.*, 2014 U.S. Dist. LEXIS 21571 (E.D. Cal. Feb. 18, 2014).

24. For purposes of determining whether the minimum amount in controversy has been satisfied, "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability." *Lewis v. Verizon Communs., Inc.*, 627 F. 3d 395, 400 (9th Cir. 2010). The ultimate inquiry is what amount is put "in controversy" by Plaintiff's Complaint, not what Defendant will actually owe if Plaintiff prevails. *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) ("It's not a question as to what you would owe. It's a question as to what is in controversy.").

25. The alleged amount in controversy in this class action, in the aggregate, exceeds $5 million.

26. Plaintiff's Complaint seeks relief on behalf of, among other proposed classes, the proposed Class, defined as, "[a]ll persons who worked for any Defendants in California as an hourly-paid or non-exempt employee at any time during the period beginning four years and 178 days before the filing of the initial complaint in this action and ending when notice to the Class is sent." See Exh. A to Graham Decl., Compl. ¶ 24.

27. Defendant presently employs approximately 145 non-exempt employees at Defendant's West Sacramento – Promenade facility who could potentially qualify for the proposed Class ("Current Employees"). Middleton Decl., ¶ 10. From June 28, 2021,

through the present, Defendant employed approximately 364 former non-exempt employees at Defendant's West Sacramento – Promenade facility who could potentially qualify ("Former Employees"). Middleton Decl., ¶ 9. The total prospective Class count for the West Sacramento – Promenade facility is approximately 509 ("Class"). Middleton Decl., ¶ 8.

28. The hourly rates, over the entire period, for the purported class members Plaintiff seeks to represent at the West Sacramento – Promenade facility average $18.18, and the number of workweeks for those employees is approximately 10,156. Middleton Decl., ¶ 8. Defendant pays its non-exempt employees at the West-Sacramento – Promenade facility on a weekly basis, resulting in approximately 58 pay periods between June 28, 2023 and the present. Middleton Decl., ¶ 10.

29. Plaintiff and the putative Class members are or were full time employees who regularly scheduled to work shifts of at least 8 hours a day, 5 days a week. Middleton Decl., ¶ 5.

30. In his Complaint, Plaintiff alleges, "Defendants maintained a policy and practice of not paying Plaintiff and the Class for all hours worked, including minimum, straight time, and overtime wages. Defendants required Plaintiff and the Class to work 'off-the-clock,' uncompensated by, for example, requiring Plaintiff and the Class to perform prior to clocking, during meal periods, and after clocking out. Some of this unpaid work should have been paid at the overtime rate." See Exh. A to Graham Decl., Compl., ¶¶ 15, 31-49. Plaintiff further alleges that Defendants "systematically" failed to pay or provide Plaintiff and the Class all such minimum wages and overtime wages due. *Id.* at ¶¶ 39, 49.

31. Plaintiff further alleges Defendants similarly "regularly" denied rest and meal breaks, and failed to pay premiums for said missed breaks. *Id.* at ¶¶ 16-17, 50-57.

32. Plaintiff further alleges he and alleged former employee Class members were not timely paid all wages due and owing to them upon termination. *Id.* at ¶¶ 18, 58-64.

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

33. Plaintiff further alleges he and alleged Class members were not provided with accurate wage statements. *Id.* at ¶¶ 19, 65-72.

34. Plaintiff further alleges that Defendant failed to reimburse Plaintiff and alleged class members for necessary business expenses, specifically for personal cell phone use and work attire/equipment. *Id.* at ¶¶ 20-21, 73-77.

35. Based upon these allegations, Plaintiff seeks to recover on behalf of himself and alleged class members, unpaid wages, actual damages, liquidated damages, unreimbursed expenses, penalties, and attorneys' fees, among other relief. See Exh. A to Graham Decl., Compl., Prayer for Relief.

36. As set forth below, the amount in controversy implicated by the classwide allegations exceeds $5 million. All calculations supporting the amount in controversy are based on the allegations contained in Plaintiff's Complaint, assuming, without any admission, the truth of the facts alleged and assuming liability is established. When the amount in controversy is not apparent from the face of the Complaint, a defendant may state underlying facts supporting its assertion that the amount in controversy exceeds the jurisdictional threshold. *Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 682-683 (9th Cir. 2006).

37. **Failure to Pay Hourly and Overtime Wages.** In his first and second causes of action, Plaintiff seeks redress for unpaid hourly and overtime wages. See Exh. A to Graham Decl., Compl. ¶¶ 31-49. He seeks these payments for time allegedly spent performing work off the clock, prior to clocking in, during meal periods, and after clocking out. *Id.* at ¶¶ 14-15.

38. Plaintiff's Complaint does not allege how much time he or the other putative class members he seeks to represent allegedly spent working off-the-clock. See Exh. A to Graham Decl., Compl. ¶¶ 14-15, 31-49. While Defendant denies Plaintiff's allegations or that he or the putative class members are entitled to any relief, Defendant reasonably estimates for the sake of removal that Plaintiff is alleging that employees

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

worked, at a minimum, 15 minutes of uncompensated time each shift for time employees were allegedly required to work off-duty.

39. Assuming each employee worked 15 minutes off the clock each shift, the reasonable estimate of the amount in controversy for Plaintiff's first cause of action for unpaid hourly wages is $230,795.10 ($18.18/hr. x 10,156 workweeks x 1.25 hours/week). Further the reasonable estimate of the additional amount in controversy for Plaintiff's second cause of action for unpaid overtime is $115,397.55 ([$18.18/hour x 0.5[1]] x 10,156 workweeks x 1.25 hours/week).

40. **Meal and Rest Period Payments.** In her third and fourth causes of action, Plaintiff seeks redress for (1) denial of meal periods and (2) denial of rest breaks. See Exh. A to Graham Decl., Compl. ¶¶ 16-17, 50-57, Prayer for Relief.

41. A non-exempt employee who works more than five hours in a day is entitled to a meal period. Labor Code § 512. Labor Code § 226.7 requires employers to pay an extra hour's pay at the employee's regular rate of compensation for each shift that an employee is not provided a meal period or a rest period. An employee denied meal and/or rest periods may be entitled to an hour's wages per day for failure to provide meal periods and an additional hour's pay per day for failure to provide rest periods. *United Parcel Service Wage & Hour Cases*, 196 Cal. App. 4th 57, 69 (2011); *see also Marquez v. NLP Janitorial, Inc.*, No. 16-cv-06089-BLF, 2019 WL 652866, at *7 (N.D. Cal. Feb. 15, 2019) (same). Plaintiff alleges each putative class member is entitled to meal break premiums for each day a meal period is missed, in addition to rest break premiums for each day a rest period is missed. Exh. A to Graham Decl., Compl. ¶¶ 53, 57.

42. The statute of limitations for recovery for meal or rest period premium pay under California Labor Code section 226.7 pay is three years. *Murphy v. Kenneth Cole*

[1] While Labor Code section 510 requires overtime to be calculated at one and one-half (1.5) times the regular rate of pay, because Defendant already accounted for the underlying straight time rate for Plaintiff's minimum wage claim damages, Defendant has applied .5 rather than 1.5 for purposes of calculating the overtime claim damages.

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA
90071
213.443.4300

*Prods., Inc.*, 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."). Plaintiff alleges a claim for meal and rest break premiums pay as part of his unfair competition claim under Business and Professions Code section 17200, et seq., and Plaintiff alleges that a four-year statute of limitations applies to the proposed classes. Cal. Bus. & Prof. Code § 17208; see Exh. A to Graham Decl., Compl. ¶¶ 24, 94.

43. From June 28, 2020 through the present, non-exempt employees worked 10,156 workweeks including approximately 5 full time shifts per week that lasted over 5 hours. Middleton Decl., ¶¶ 5, 8. On these shifts, non-exempt employees are entitled to at least one meal period. Based on Plaintiff's allegations that Defendant "regularly" failed to provide legally compliant meal periods by "requiring, pressuring, or encouraging [Plaintiff and the Class] to perform work tasks which could not be completed without working in lieu of taking mandatory meal periods or by denying Plaintiff and the Class to take a meal period" (Compl. ¶ 16), Defendant has reasonably estimated for the sake of removal that Plaintiff is asserting a meal period violation for 60%[2] (the equivalent to three shifts a week in a five-day workweek). Under that assumption, the amount in controversy for Plaintiff's meal period claims totals $553,908.24 (5 meal period violations/week x 1 hour meal premium x $18.18 average hourly rate x 10,156 work weeks x 60%).

---

[2] See, *Sanchez v. Abbott Lab'ys*, No. 2:20-CV-01436-TLN-AC, 2021 WL 2679057, at *4–5 (E.D. Cal. June 30, 2021) ("courts in the Ninth Circuit have frequently held a violation rate between 20% and 60% to be reasonable when the plaintiff claims a 'pattern and practice' of violations. [Citations.] Here, as in the foregoing cases, Plaintiff alleges a 'pattern and practice" of meal period violations. Thus, a 60% violation rate is reasonable. However, even if the Court applied a violation rate of 40% — a median between 20% and 60% — the amount in controversy would still be sufficient to surpass the $5 million threshold under CAFA with Plaintiff's other claims."). Here, even if Defendant applies a 40% violation rate, the amount in controversy for Plaintiff's meal period claims would be $369,272.16 (5 meal period violations/week x 1 hour meal premium x $18.18 average hourly rate x 10,156 work weeks x 40%), which would still put Plaintiff's amount in controversy over the $5 million threshold for purposes of CAFA.

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

44. As to rest periods, Plaintiff alleges "Defendants regularly required Plaintiff and the Class to work in excess of four consecutive hours a day without Defendants authorizing and permitting them to take a 10-minute, uninterrupted, duty-free rest period for every four hours of work (or major fraction of four hours) … Instead, Defendants continued to assert control over Plaintiff and the Class by requiring, pressuring, or encouraging them to perform work tasks which could not be completed without working in lieu of taking mandatory rest periods, or by denying Plaintiff and the Class permission to take a rest period." See Exh. A to Graham Decl., Compl. ¶ 17.

45. This amounts to an allegation that Plaintiff and the putative class members suffered a rest break violation in every rest break-eligible shift, i.e., any shift over 3.5 hours. For purposes of removal, Defendant has conservatively assumed that 95% of total shifts were over 3.5 hours (see Middleton Decl. at ¶¶ 5, 8), and that Plaintiff is alleging he was denied a completely off-duty rest period "regularly." Given these allegations, assuming he missed at least one of two rest periods per shift in any given workweek, the amount in controversy for Plaintiff's rest period claim totals $877,021.38 (5 rest period violations/week x 1 hour rest premium x $18.18 average hourly rate x 10,156 work weeks x 95%).

46. **Labor Code § 203 – Waiting Time Penalties.** Plaintiff's fifth cause of action seeks payment for waiting time penalties under Labor Code sections 201, 202, and 203, and is derivative of Plaintiff's other claims for unpaid minimum wage, overtime compensation, and meal and rest break violations. See Exh. A to Graham Decl., Compl. ¶¶ 18, 58-64.

47. Labor Code section 203(a) provides that, "if an employer willfully fails to pay any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty" from the date such wages were due until the date paid, not to exceed 30 days.

48. The limitations period for potential claims under Labor Code section 203 is from June 28, 2021 (three years before the Complaint was filed) to the present. During

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

the time frame of June 28, 2021 to about June 25, 2024, there were approximately 364 non-exempt employees at the West Sacramento – Promenade facility whose employment was separated. Middleton Decl., ¶ 9.

49. Conservatively assuming for purposes of removal that employees worked an average of about 8 hours per day, the reasonable estimate of the amount in controversy for Plaintiff's fifth cause of action for waiting time penalties is $1,588,204.80 (364 employees x 8 hours per day x $18.18 per hour x 30 days).

50. **Labor Code § 226 – Wage Statement Penalties.** Plaintiff's sixth cause of action seeks damages for Defendant's alleged failure to provide the putative class with accurate itemized wage statements, in violation of California Labor Code section 226. See Exh. A to Graham Decl., Compl. ¶¶ 19, 64-71. Labor Code section 226(e) provides a minimum of $50 for the initial violation as to each employee, and $100 for each further violation as to each employee, up to a maximum penalty of $4,000 per employee. The statute of limitations for recovery of penalties under Labor Code section 226 is one year. Cal. Civ. Proc. Code § 340(a).

51. Plaintiff alleges he and the putative class members were derivatively deprived of an accurate wage statement each pay period because the wage statements lacked "all applicable hourly rates, all overtime hourly rates, and all gross and net wages earned (including correct hours worked, correct wages for meal periods that were not provided in accordance with California law, and correct wages for rest periods that were not provided in accordance with California law." See Exh. A to Graham Decl., Compl. ¶ 9. Defendant pays nonexempt employees weekly – thus, there are approximately 52 pay periods each year, and between June 28, 2023 to the present there have been approximately 58 pay periods. Middleton Decl., ¶ 10.

52. Defendant currently has approximately 145 current non-exempt employees. Middleton Decl., ¶ 10. Over the one-year statute of limitations for this claim, Defendants estimate that these Current Employees at the West Sacramento – Promenade facility worked during approximately 8,410 pay periods (145 employees x

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

58 pay periods). Middleton Decl., ¶ 10. Accordingly, the amount in controversy for Plaintiff's sixth cause of action for wage statement penalties is approximately $833,750.00 ([$50 for the initial pay period x 145 initial pay periods] + [$100 x (8,410 total pay periods – 145 initial pay periods)]).

53. **Labor Code § 2802 – Failure to Indemnify.** In Plaintiff's seventh cause of action, he alleges Defendant required Plaintiff and other putative class members to utilize their personal cell phones for work purposes and purchase work attire and/or equipment, but failed to reimburse them for such usage. See Exh. A to Graham Decl., Compl. at ¶¶ 20-21, 73-77. Plaintiff seeks reimbursement for these purported business-related expenses plus attorneys' fees, expenses, and cost of suit. *Id.* at ¶¶ 21.

54. California Labor Code section 2802 requires employers to reimburse employees for necessary expenditures incurred in direct consequence of their duties.

55. For purposes of removal only, assuming Plaintiff is alleging that each of the 509 members of the putative Class at the West Sacramento – Promenade facility were required to use their personal cell phones for work and purchase required uniform items or work equipment, and further assuming each putative Class member incurred $150 each in business expenses for work uniforms/equipment and $50 per month each[3] for personal cell phone use, the amount in controversy for this claim is approximately $246,100 ([509 employees x $150] + [2377 months x $50]).

56. **Amount in Controversy—Plaintiff's Attorneys' Fees Claim.** Finally, Plaintiff seeks attorneys' fees and costs as to each of the eight causes of action in his Complaint. See Exh. A to Graham Decl., Compl. ¶¶ 40, 48, 64, 72, 77, 91, Prayer for Relief. Thus, the Court must consider attorneys' fees in determining whether the amount in controversy is met, as it is well-settled that claims for statutory attorneys' fees are to be included in the amount in controversy. See, e.g., *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005), *as amended on denial of reh'g and reh'g en banc* (Feb.

[3] Defendant asserts there are approximately 2377 months worked by non-exempt employees at the West Sacramento – Promenade facility during the time period of June 28, 2020 to the present time. Middleton Decl., ¶ 8.

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

13, 2006); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.").

57. In California, it is not uncommon for an attorneys' fee award to be 25 to 33 percent of a settlement or judgment. *See, e.g., McGuigan v. City of San Diego*, 183 Cal. App. 4th 610, 638 (2010), *as modified on denial of reh'g* (Apr. 27, 2010) (noting attorneys' fees paid in settlement of $1.6 million); *Vasquez v. State of California*, 45 Cal. 4th 243, 249 (2008), *as modified* (Dec. 17, 2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties, and waiting time penalties); *Amaral v. Cintas Corp. No. 2,* 163 Cal. App. 4th 1157, 1216-1218 (2008) (affirming award of $727,000 in attorneys' fees plus a multiplier that equated to total fees of $1,199,550 in class case involving violations of a living wage ordinance, the California Labor Code, as well as unfair competition and contract claims); *see also Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around onethird of the recovery").

58. The attorneys' fees benchmark in the Ninth Circuit is 25 percent. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("We note with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent."); *Lo v. Oxnard Euro. Motors, LLC*, No. 11CV1009 JLS MDD, 2012 WL 1932283, at *3 (S.D. Cal. May 29, 2012) ("The Ninth Circuit has accepted as a benchmark for an attorneys' fees awards a twenty-five percent of the common fund recovery.").

59. Based on the above, the amount in controversy for unpaid hourly wages ($230,795.10), overtime wages ($115,397.55), meal period premiums ($553,908.24), rest period premiums ($877,021.38), failure to pay wages at termination

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA
90071
213.443.4300

($1,588,204.80), wage statement penalties ($833,750.00), and unreimbursed business expenses ($246,100) through the time of this filing, is conservatively $4,445,177. Taking into account attorneys' fees at the benchmark percentage of 25 percent increases the amount in controversy by $1,111,294.27, for a total amount in controversy of $5,556,471.

60. Based upon the foregoing, Defendant reasonably concludes that for the purposes of removal, the amount in controversy for all asserted claims is approximately $5,556,471 for the West Sacramento – Promenade facility alone, and not including any other of Defendant's facilities in California, summarized as follows:

| | |
|---|---|
| *Unpaid minimum wages* | $230,795.10 |
| *Unpaid overtime wages* | $115,397.55 |
| *Meal period premiums* | $553,908.24 |
| *Rest period premiums* | $877,021.38 |
| *Final pay/waiting time penalties* | $1,588,204.80 |
| *Wage statement penalties* | $833,750.00 |
| *Business expense reimbursements* | $246,100 |
| *Attorneys' Fees* | $1,111,294.27 |
| ***TOTAL*** | **$5,556,471** |

61. In sum, Defendant has established by a preponderance of the evidence that the amount in controversy vastly exceeds the $5 million jurisdictional minimum for CAFA removal.

## VII. CONCLUSION

62. Although Defendant denies Plaintiff's claims as alleged in the Complaint, Defendant has established by a preponderance of the evidence regarding the West Sacramento – Promenade facility only that the putative class exceeds 100 persons, that

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

the dispute is between citizens of different states, and that the amount in controversy for this class action exceeds the $5 million minimum for federal jurisdiction. ***These numbers meet the minimum threshold for CAFA removal even without including any of Defendant's other California warehouse facilities***. For this reason and the others discussed above, removal of this action is appropriate under 28 U.S.C. §1332(d).

63. WHEREFORE, Defendant hereby removes this action from the Superior Court of the State of California, County of Sacramento, to the United States District Court for the Eastern District of California, Sacramento Division.

Dated: August 2, 2024

LITTLER MENDELSON, P.C.

*/s/ Alexandria Rafizadeh*

Curtis A. Graham
E. Cliff Martin
Alexandria Rafizadeh

Attorneys for Defendant
LINEAGE LOGISTICS SERVICES, LLC

4884-5588-3475.4 / 083987-1066

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300